<table>
<tr><td>District Court, Larimer County, Colorado<br>201 LaPorte Ave<br>Fort Collins, CO 80521<br><hr>Plaintiff(s): Marisa Bateman<br><br>v.<br><br>Defendant(s): Health Insurance Innovations, Inc. and Companion Life Insurance Company</td><td>DATE FILED: October 31, 2016 4:54 PM<br>FILING ID: 158F80ED8D4BD<br>CASE NUMBER: 2016CV31000<br><br>▲ ▲<br><br>COURT USE ONLY</td></tr>
<tr><td>Attorney for Plaintiff:<br>Matthew R. Osborne #40835<br>10465 Melody Dr, Ste 325<br>Northglenn, CO 80234<br>Phone Number: 303-759-7018<br>E-mail: matt@mrosbornelawpc.com</td><td>Case Number:<br><br><br><br>Division Courtroom</td></tr>
<tr><td colspan="2">COMPLAINT</td></tr>
</table>

1. Plaintiff is an individual consumer and a resident of Loveland, CO.

2. Defendant Health Insurance Innovations, Inc. (HII) is a Florida company located at 15438 N. Florida Ave., Ste 201, Tampa, FL 33613.

3. Defendant Companion Life Insurance Company (Companion) is an insurance company located in South Carolina, and does business on a regular basis in the state of Colorado, including selling insurance policies to Colorado consumers. Companion is registered with the Colorado division of insurance to conduct business in the state of Colorado.

4. Defendant HII is in the business of selling insurance policies on a nationwide basis to consumers all over the country.

5. As described by HII, "We are a developer, distributor and virtual administrator of affordable individual and family health insurance plans and supplemental products. We sell individual and family insurance plans ("IFP") that include short-term medical ("STM") insurance plans and hospital indemnity plans."

6. STM plans provide up to six, eleven or twelve months of health insurance coverage with a wide range of deductible and co-pay levels. STM plans generally offer qualifying individuals comparable benefits for fixed short-term durations with premiums that are substantially more affordable than the premiums of individual major medical ("IMM") plans which offer lifetime renewable coverage. STM plans feature a streamlined underwriting process offering immediate coverage options. Hospital indemnity plans are guaranteed-issue and underwritten plans that pay fixed cash benefits for covered procedures and services for individuals under the age of 65.

7. As described by HII, " We design and structure these products on behalf of insurance carriers and market them to individuals through our internal and external distribution network."

8. HII sells insurance policies that are issued by the following companies: HCC Life Insurance Company, Companion Life Insurance Company, Standard Life and Accident Insurance Company, Nationwide Mutual Insurance, and US Health Group.

9. In April 2015, Plaintiff learned from her doctor that she needed immediate surgery due to stomach related issues.

10. On April 15, 2015, Plaintiff went online to search for insurance quotes, and came across HII's website. After inputting some information, Plaintiff was contacted by a gentleman named "Dale" who said he was with HII.

11. Plaintiff advised Dale on April 15, 2015, that she had a tumor in her stomach and needed immediate surgery to have it removed. During the conversation, Dale said he had just the plan for her, it was a "medical indemnity policy" that was to be a cost sharing policy that would cover 70/30, and was a PPO plan that had many network practitioners. During the call, Dale further told Plaintiff that there were no exclusions for pre-existing conditions. Plaintiff purchased an insurance policy on April 15, 2015 from Dale at HII.

12. Dale advised Plaintiff that there was a 30 day waiting period before coverage to kick in.

13. Plaintiff scheduled her surgery for May 15, 2015, which was 30 days from her conversation with Dale.

14. Prior to her surgery, Plaintiff had a few calls with HII agents, in which she verified her surgeon/hospital were in network.

15. Prior to her surgery, Banner Health called HII's agents and verified coverage. Banner Health then provided Plaintiff with an estimate of the bill in the amount of $12,000.

16. After Plaintiff had her surgery, she started getting bills from Banner Health and from WEBTPA, who was some type of 3rd party administrator. In response, Plaintiff would call HII and WEBTPA, who assured her not to worry, that things were progressing, and the final payment had not yet been made.

17. In or around August 2015, Plaintiff received a bill from Banner Health for approximately $52,000, which indicated that Plaintiff's insurance had only covered $1,500. Banner later advised Plaintiff that if she didn't have insurance at all, they would have only charged her $16,000 rather than $52,000.

18. Plaintiff later discovered that the "policy" that HII sent her identified Companion Life Insurance Company, and was completely opposite of essentially everything that Dale had told Plaintiff over the phone. For example, the policy did have pre-existing conditions that were excluded. Most importantly, there were **no surgery benefits** covered at all under the policy. Further, the policy basically didn't cover anything, and the benefits were nominal at best.

## COUNT I, FRAUD

19. HII's agent Dale made several false statements of material fact to Plaintiff on April 15, 2015, including the following: that the insurance policy would cover 70% of covered benefits, that the policy was a PPO plan that had many network practitioners, and that the policy did not contain any exclusions for pre-existing conditions.

20. Dale's false statements were made with the intent to deceive Plaintiff into purchasing the policy. This type of behavior by HII is consistent with HII's questionable practices with consumers across the nation. HII recently received cease and desist orders from the government regulators in Arkansas and Montana as a result of HII agents misrepresenting the terms and conditions of the policies prior to sale.

21. Plaintiff reasonably and actually relied on Dale's false statements.

22. Dale's false statements caused the Plaintiff actual damages to be determined at trial, including worry, stress, inconvenience, being stuck with a $52,000 medical bill which Plaintiff is unable to pay, being sent to collections, damage to credit and reputation, and emotional distress.

23. Pursuant to C.R.S. § 10-2-401, both Dale and HII are insurance producers, and are deemed to be agents acting on behalf of Defendant Companion as the principal.

24. Dale and HII had actual and apparent authority to make the misrepresentations to Plaintiff, which was binding on Defendant Companion as the principal.

## COUNT II, NEGLIGENCE

25. HII's agent Dale was negligent in advising Plaintiff that he had found an insurance policy which covered the needs that Plaintiff had expressed to him over the phone during the April 15, 2015 conversation.

26. Dale's negligence caused the Plaintiff actual damages to be determined at trial, such as being liable for medical expenses that Plaintiff reasonably believed would have been covered by the policy.

WHEREFORE, Plaintiff prays for the following relief:

a. actual damages to be determined at trial;
b. costs of litigation;
c. for such other relief as may be proper.

s/ Matthew R. Osborne
Attorney for Plaintiff
.